The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Jennifer Moore v. British Airways PLC, Appeal Number 21-1037. Attorney Chris Anthopoulos, please introduce yourself for the record and your argument. Good morning. My name is Kevin Chris Anthopoulos. I represent the Plaintiff Appellant Jennifer Moore. May it please the Court. I believe the majority of the facts in this case are not disputed. Essentially, the Plaintiff Appellant was traveling to Boston or from Boston to Heathrow International Airport in London via the defendant's airliners. Upon arrival, the jet bridge was broken, which set off a series of events, including the necessity to use portable stairs, which were brought over to disembark the passengers. I think counsel, you can safely assume that we're familiar with the facts and that we've read the briefs. Great. Thank you, Your Honor. I'll move along. So, I believe the controlling test in this case was set in SACS, in Air France v. SACS, which I presume the Court is aware as well that injury is caused by an unexpected or unusual event or happening that is external to the passenger. Let's look at that statement. There's no question in this case that what happened was external to the passenger. So, we're now focused on unusual or unexpected. The use of this particular type of portable staircase, it seems to me, on the facts as I understand them on this record, there's nothing that indicates that this was unusual. So, the issue in this case is going to this staircase with this steep final step, whether this meets the unexpected prong of the test. My real question for you is how do we determine whether something is unexpected? The question is unexpected to whom or by whom? Well, thank you for the question, Your Honor. I would suggest it was certainly unexpected to my client. But it's not the test. It is not the test, I do not believe. It was also unexpected to another passenger who was with my client, also not the test. But the plaintiff retained an expert in this case who opined that the excessive riser height was unreasonable and was dangerous and it led to this misstep. So, I believe with the expert testimony in this case, it certainly, I think, sets forth that it was unexpected. But again, unexpected to whom? You say not to your client, not to the other passenger. I would say unexpected. Go ahead. No, I'm sorry. I would say unexpected to the average traveler. Okay. The hypothetical reasonable passenger, something like that? Correct. Okay, thank you. And I think that this case is actually very similar to Fishman, whereas in Fishman... Counsel, before you get into that, I don't mean to cut you off. I just wonder if I might ask one question. If the standard is the hypothetical reasonable passenger, would we take into account, should discovery provide the answer to this question, would we also take into account the history of, in this case, your client, a particular passenger? If you had a frequent traveler and it were established that that person used these particular riser difference many, many times, would that factor into the determination of what a reasonable passenger might expect? Great question, Your Honor. I would say it definitely would be a factor if someone uses these stairs on a weekly or monthly basis that they're familiar with the step. In this case, there's evidence that my client has not used portable stairs in the past. So how would you describe the test if it's not just reasonable passenger in these circumstances? Do you have a phrasing that you would use? I don't, Your Honor. Okay. I wonder, and I'm simply asking you to consider this, I wonder whether the circumstance that mentions, does that go to whether the event is unexpected or does it go to some possible defense, such as whether an airline could assert contributory negligence or assumption of the risk, something like that on the part of the passenger? Thank you. I'm not sure that would apply. My understanding is that it's almost a strict liability type of incident with regard to an accident under the Montreal Convention. I will just point out with the Fishman case, so you had the use of the hot compress, which was deemed normal at the time. So that wasn't technically the accident. The accident was the dripping of the hot water, the unreasonably hot water, onto the child. And in this case, the defendants alleging the stairs were normally used, I would suggest that it was the step off of the last step, the unreasonable height difference, which is the accident, not the use of stairs which are normally used on this type of case. How do we know? Let's suppose that we had evidence that showed for the last 500 times those stairs were used at various terminals and airports, there was always a 13-inch drop at the last step. Then I would assume someone would argue that you can hardly say it's unusual or unexpected if it's always that way. Yes, thank you, Your Honor. We don't have that evidence in this case. There's no evidence of how often they were used, only that it's normal for them to use it in this case. At some point, that step off has to become unreasonable. What if it was a three-foot step off and the airline's position is just because we use them on occasion or normally when there's a jetway broken, that it's okay and we can't be held liable? And I would revert back in this case that we had our expert come in, used various standards. There's some argument about whether British Airways was voluntarily part of these standards or not. But at the very least, British Airways should have known that the use of these stairways was unreasonable and could lead to a misstep, which it did in this case. The court, this court in Dodgy, appears to add on a second prong of the test. However, it appears that the court today doesn't seem to be focused on that, only that it was an unexpected or unusual event. So again, I would suggest that our expert... Are you referring to the use of the word inappropriate? Correct. And I think the court took that added prong from the Fishman case, but I don't believe the Fishman case says that. Only that in the Fishman case, that can be a cause for an accident. The British Airways makes much of the fact that the standards your experts cite are not mandatory, quote unquote, standards. What do you make of that? Sure. One of them was voluntary, that British Airways was voluntarily part of this. But I would say it really doesn't matter. They knew of it, or at least should have known of it. There's another standard that is cited that specifically regards telescopic stairs, and it says that the maximum safety height should be, I believe it was 10.24 inches. In our case, we're at 13 inches. We're almost double the step off of every other step that the plaintiff used at that time. When you say that they should have known of it, that sounds like you're talking about a traditional negligence case. Don't you need to relate the standards that you're pointing to, not to what they knew or should have known, but to what is either unexpected or unusual? I agree, Your Honor. I think, again, I keep reverting back to my expert, but that's who I'm relying on in this case, as he has testified that it was unexpected. It was unusual to have that significant height difference as compared to, not as compared, just in general. But he never said it was unusual to have that as compared to other portable stairs used by airlines. Correct. He did not review any other portable stairs. There are, I don't know, personal and in this case, again, with the excessive, I don't think there's any dispute that it was an excessive step off. It was double the other steps. Nothing was done to assist the passengers in any way, whether a warning or an additional step or a ramp or having someone there guide the passengers off. So, again, I would suggest that that was unusual. There was also ground I'm sorry? You suggest, you just said, I would suggest that was unusual, and I don't understand what the that refers to. The excessive step. Is there any evidence that this portable staircase was different than any other portable staircase used by an airline for big boarding? There is no evidence. How can we say it was unusual? Our expert is saying it's, well, I see your point, your honor. Our expert is saying that it was excessive and it was dangerous. And that may make it unexpected. Correct. But I haven't been able to find in this record, in the summary judgment record, any evidence that it was unusual. I agree with you. I shouldn't have used that word. So more unexpected. Four minutes remaining. Of course, it was only unexpected if it was unusual. I'm sorry to separate the two. I'm sorry, your honor, I didn't hear you. It's a little hard to separate unexpected and unusual because if it was unusual, that makes it more likely it was unexpected. And conversely, if it was the constant, ever-present condition, you'd have a harder time saying it's unexpected. So I think what we need to focus on is what the 13-inch drop-off, is that unusual or unexpected? And again, I'm pointing to my expert who is in industry opine that it is an excessive, unreasonable height difference, double the length of all the other stairs. And in his opinion, it was dangerous and led to my client's fall. Let me see if either of my colleagues have any more questions for you. I'm content. Thank you. Anything more you need to say to wrap up or are you all set? I'm sorry, there's nothing further. All right. Well, thank you very much. Thank you. Attorney Chris Anthopoulos, at this time you can mute your audio and video. Attorney Lefland, please go ahead and unmute your audio and video and introduce yourself on the record to begin. Good morning and may it please the court. My name is Marissa Lefland and I represent Apelli British Airways. British Airways respectfully request that this court affirm the decision of the district court, which correctly held that Ms. Moore cannot show that British Airways was liable for her injuries because she could not show that she was injured as the result of some unexpected or unusual event that was external to her as required by Article 17 of the Montreal Convention. All of the evidence in this case shows that the staircase in question was operating normally, appropriately, and as intended. All of the that it was functioning properly and that it was otherwise in good working order. As was discussed a few moments ago, the standard in this case is not negligence. The standard in this case is whether Ms. Moore was injured as the result of an accident. And although much has been made about the fact that the distance between the final step and the ground was greater than the distance between the preceding steps, that may be true, but it is not true. The step is considerably steeper than any of the other steps. It was deeper. Yes, it was. So that on your rationale, if the final step is 20 feet from the ground, that's all right too as long as it's used all the time. 20 feet? 20 feet, yeah. Well, that would certainly be a drop, wouldn't it? It certainly would. Well, I would say that this staircase was inspected twice after the incident. No one is saying that the staircase isn't in proper condition. The question is whether, to me, the question is whether an experienced air traveler or a hypothetical reasonable passenger, as we said in the other argument, would expect to find such a sharp variance in the height of the steps when she was going down a portable staircase in the process of the boarding. And if a jury could answer that question in the affirmative on this record, I'm struggling with the notion of why this case was decided on summary judgment. Well, Judge Saliat, your hypothetical, I think, gets back to the question of why we consider this question of accident from the objective perspective and not from what this passenger or perhaps her colleague personally expected. I agree with that. And in Saks, the U.S. Supreme Court noted that when an injury indisputably results from the normal operation of the aircraft, there has been no accident. But take my case where you've got the last step is a 20-foot drop, but that's normally the way that that haphazard airlines, which is the carrier, you know, that I'm representing, operates. We have portables, we deboard a portable staircase, the last step is a 20-foot drop. The fact that it's on normal operating procedure could possibly insulate us from liability, can it? Well, I think a 20-foot drop would certainly be a different way of disembarking than it was in this case. And I know that portable staircases are used all the time, and there's no dispute about that in the record. I think that if a 20-foot drop was used all the time, we might have a standard. But in this case, everyone who looked at the staircase looked at it, examined it, inspected it, and said, this is the way the staircase always looks. There was nothing wrong with it. There was nothing that should have, could have, or would have been done. Let me interrupt on that. Are you saying that there's undisputed evidence that there was always a 13-inch drop at the last step? With respect to the 13-inch measurement, I would say that nobody measured the distance between the final step and the ground in this case. It should be pointed out. It was estimated by a view of the photograph by Ms. Moore's expert, but a British Airways safety officer, the cabin service director, who was like the purser of the flight, and the first officer of the flight all testified that when they looked at the staircase, and then when it was inspected more thoroughly at an inspection, when the staircase was taken out of service, everyone said that it was how it was meant to be, I think, was the testimony. But go back to my question. Certainly, when they measured it when it was out of service, it wouldn't have had necessarily the same configuration relative to the ground or the ground and the same. So I go back to my question. Are you saying that it's undisputed that there was always a 13-inch drop on the last step whenever staircases are used? I can't speak specifically as to the specific inches because that wasn't taken and I don't want to misrepresent. Well, that's what we're talking about here is the 13-inch drop. I will say that when the parties conducted an inspection of the staircase in question, the staircase was put to the setting for a Boeing 777, which was the same aircraft that was used that Ms. Moore had traveled on right before the incident. And the distance between the final step and the ground, Ms. Moore testified, she looked at a photograph from that inspection, and she testified that the distance between the final step and the ground, as shown in that photograph from the inspection, was the same as the distance between the final step and the ground that she observed on that day. And her expert, by looking at the size of the binder that was lined up by that step, estimated that that was a 13-inch drop. That was his estimate, yes. Okay, so how can you say, how can we say that a jury couldn't find that a 13-inch drop is unexpected? It's quite a drop compared to seven inches, given the nature of a misstep accident. Because the question in this case, the courts seem to look for some sort of predictability. And the courts always consider, not whether the passenger personally expected it, or there was the Gotts case out of the District of Massachusetts. And the passenger, the plaintiff in that case, was putting a piece of baggage in the overhead baggage compartment, and another passenger reached up very suddenly, had his arm in the plaintiff's face, and it caused the plaintiff to personally be very surprised about that, hyperextended his shoulders, and sustained shoulder injuries. Yes, but let's go back to the stairs, and let me take a version of Judge Salyer's example. Suppose it was 20 inches. Suppose there's a 20-inch drop at the last step. Anyone who doesn't notice that, or isn't warned of it, is going to go head over heels onto the would be that British Airways would tell us that's something we should expect when we travel on British Airways? Your Honor, I would argue that in that case, what we would have to look at is whether British Airways adhered to all of the requirements, its policies and procedures in setting up the staircase. And there is no evidence that any other staircase at Heathrow was any different. There is no evidence that any airline set up its staircases any differently or had any different height difference between the bottom step and the ground. I don't think I've heard an answer to my question about the 20-inch drop. Is that something we should expect traveling on British Airways? A reasonable passenger should expect. If that is the way that the British Airways and other similar staircases are set up, and if that is standard and appropriate and intended for those staircases, then yes, it would be objectively expected. And then what if there are a bunch of voluntary standards that say, please don't do that. It's dangerous. A lot has been made about the height differences that the plaintiff's expert has proposed. And the word standard has been used quite a lot in the briefing and the argument. But there is nothing to suggest that those proposed heights are in fact standard or that they have been adopted by Heathrow, by other airports, or by other airlines. There is simply nothing that is standard about them. Well, couldn't a juror say 13 inches sounds like a heck of a drop to me after going down 20-plus steps of 7-inch risers? And then I see there are these standards out here. They're voluntary, but given that it seems a little unexpected and the standards suggest that it shouldn't be that way, couldn't a jury find that it's really not the norm to have a 13-inch drop? Well, the real question, Judge Kayada, is whether it was the norm. And that a high height has been proposed doesn't render it the norm. And if we go back to SACS, when an injury indisputably results from the normal operation of the staircase, even if it wasn't personally expected by the passenger, there has been no accident. So what's the rule? No matter how dangerous something is, if it's the normal way in which the airline operates, there's no accident and thus no liability. I mean, that seems to create a perverse incentive for an airline not to take any safety precautions at all. Well, Judge Salyer. Four minutes remaining. I would argue that aviation is one of the most regulated and standardized industries in the world. And air carriers are required to adhere to countless stringent safety requirements. And in this case, the airline was conducting its business in a manner that was typical and appropriate and was completely in line with how it had been operating and continues to operate. And so for that reason, I would disagree that airlines would not have incentives to institute safety measures as appropriate. But a rule that says because you now you started off with normal and now you're talking about typical, which to me pretty much mean the same thing. A rule that says that just because you always do something the same way and you continue to do it, you're insulated from liability, creates no incentive at all for you to be safe. What if the norm on, let's not talk about British Airways, let's talk about Airline X. What if the norm on Airline X is that it's all right for the pilots to have a few drinks before they take off? Well, in that case, your honor, that would be a violation of some agency rule. But conceive of something where the regulators just haven't acted, all right? That the pilots can fly with their eyes closed. Something that's so absurd that the regulators wouldn't even think of putting it in the regulation. The fact that it's the normal way the airline chooses to operate, I'm struggling with the notion that that insulates them from liability. In that kind of case, your honor, I would expect that the plaintiff would be required to show that that kind of conduct was either acceptable in the industry or otherwise normal in the industry. And in that case, I would argue that the plaintiff would be able to show that that sort of conduct was not appropriate or acceptable or otherwise usual. This case is different. So it's the industry that governs, not the community standards? So even if reasonable people might agree that a 13-inch drop is precipitous after the number of stairs that had seven-inch rises, the fact that that industry wouldn't agree, that insulates you from liability? Yes, your honor. I believe that in that kind of case, the plaintiff would be able to show that just because one airline did it this way, it doesn't mean that it's normal or that it's expected or that it's usual. This case is different in that the plaintiff wasn't able to show that anything about this condition was unexpected or unusual anywhere or by anyone. If you're measuring unexpected by unexpected by the airline, I don't think unexpected is measured from that perspective. Doesn't the SACS standard require it to be unexpected from the vantage point objectively, of the objective standpoint of the hypothetical reasonable passenger, maybe reasonably informed passenger, who may be able to make an argument to that extent, but not from the vantage point of the airline? It is an objective standard. I agree, Judge Selya. From whose vantage point do we measure whether it's unexpected? It seems to me your argument hinges on the notion that we ought to measure it from the vantage point of the airline. I would submit, Judge Selya, that in this case the plaintiff could not show that it was objectively unusual from any vantage point. There was nothing to be shown from the air carrier's perspective, from the air carrier community's perspective. That's time. Okay, all right. You may finish up. For these reasons, Judge Kayada, British Airways respectfully requests that this court affirm the decision of the district court. Thank you, Ms. Leflin. That concludes arguments in this case. Attorney Chris Anthopoulos and Attorney Leflin, you should disconnect from the hearing at this time.